Shinseki is a Japanese temple located in Shinjuku, Tokyo, Japan. Shinseki is a Japanese temple located in Shinjuku, Tokyo, Japan. Shinseki is a Japanese temple located in Shinjuku, Tokyo, Japan.  The VA in the Veterans Court ruled that Mr. Robertson was barred from receiving veterans benefits based on his discharge by a general court-martial for absence without leave offense, an offense for which he received a full presidential pardon. But a full pardon removes all consequences and disabilities for an offense, and being barred from receiving veterans benefits was a consequence and disability of Mr. Robertson's offense. Well, it says actually, if you look on the document itself, signed by the Attorney General with the President of the Board's heading, that he receives a pardon pursuant to the grant of a conditional clemency. And then in the record provided to us, the veterans record, it says a meaning of a clemency discharge. This is A326. It's a document from the General Counsel of the White House. It says such a discharge in and of itself restores no veterans benefits. Finally, the clemency discharge, like a presidential pardon, is an expression that removes the stigma, but again, no benefits. Yes, Your Honor. This was all kind of very clear at the time, and indeed eight times since then, that it's been challenged, right? Well, the VA has consistently held to the same position that he's barred from receiving benefits, and has told him that many times since. To Your Honor's first point, though, about the wording of the pardon itself, it's made pursuant to Executive Grants Conditional Clemency, but then it goes on to say, made subject to conditions which have been fulfilled. So the conditions that were actually set forward in the pardon document were conditions precedent, But does the language in furtherance of the proclamation impact the scope of the pardon? Your Honor, we don't believe it does, and I think there's two relevant points there. One is an interpretation point. So interpreting pardons, there's a rule of interpretation set forth in Osborne, which the United States cited in both parties' briefs, that ambiguities are construed in favor of the grantee of the pardon. And Blackstone's commentaries make the same point, going back to a long English history, about you construe the pardon in favor of the grantee. That's an interpretation point. But as far as even if you look at these pardons being done in furtherance of the proclamation, there's nothing inconsistent with reading this and understanding this as being a full pardon that would be inconsistent with the present proclamation. The language that the government refers to in the proclamation was that the clemency discharge, the proclamation never mentioned pardons, but that the clemency discharge shall not bestow entitlement to veterans' benefits. And that language is important because if under certain discharges, such as honorable discharges, the VA can't second-guess that. They must view the veteran as being entitled to benefits. But isn't that the whole point, that while the pardon pursuant to the clemency program restored rights, including the right to vote, it didn't change the nature of his discharge, did it? It still has, on his record, other than honorable discharge. Your Honor, it still is on his record that he received a bad conduct discharge. But I think the point is not that that record needs to be changed.  But they didn't say to him many times, if you can change your discharge at the board for military correction, correction of military records, you'll be back in. But, of course, that's not happening. If I can, I'd like to explain why that point, I think there's a misrepresentation, not a misrepresentation, but a mis-explanation, I guess, of that process. The reason the board referred him to the ABCMR, the Board of Correctional Military Records, is because that was the one place that could undo a statutory bar. So assuming, as the board did, if you look at the 1974 decision that initially denied him benefits before his pardon, in 1977, the first time they denied him benefits after the pardon, they used the exact same language. You need to go see the ABCMR. The reason why they said that in 1974 is because only the ABCMR, absent a pardon, only they could change the fact that he had been discharged by a general court-martial. The important thing is not that Mr. Robertson doesn't have an audible discharge. The important thing is that there's a statutory bar that prevents the VA from granting him benefits. And that's why they needed to send him, or they said he needed to go to the ABCMR, to remove that statutory bar so that they could even consider him. Because the VA still has an obligation for anything other than a dishonorable discharge. The VA has an obligation to make a character of discharge determination for every veteran to say, is this veteran eligible for benefits? And that was your point that the board military review could have given him a character of discharge that would have mandated that he receive benefits. But even if they don't do that, it is still the VA's obligation to undertake an independent character of discharge. Not character of service, but character of discharge. Absolutely, Your Honor. That's exactly right. If the ABCMR had upgraded Mr. Robertson to honorable, the VA couldn't do anything else. They would be bound to honor that honorable discharge. But where Mr. Robertson's clemency discharge stands, the VA's own regulations, and the Veterans Court notes this, the VA has to make that character of discharge determination. So the error was that the VA says, we're not going past the fact that you have a statutory bar because you were discharged by a general court-martial, ergo you can't be eligible for benefits. Statutory bar, in this case, as Amicus points out and we argue, is a penalty associated with his offense. So it's not that if Mr. Robertson, that he needed the honorable discharge to apply for benefits. It's that the VA failed to honor the fact that the pardon removes the consequences and disabilities, in this case, the statutory bar. Well, that's only the case if we read full pardon in that text in the way you want to. If we read it in the context of this very unique, specific program as being conditional pardons, which there's some argument for, then the fact that he got a pardon doesn't wipe out everything. So here's what, I mean, I took a look at a lot of this stuff, and particularly at some of the program or the board reports and the Senate hearings, and it seems to me that it's very clear that the president didn't want to make these pardons an automatic grant of veterans' benefits. And in some cases, if there was exceptional circumstances, the board recommended immediate honorable discharges. In other circumstances, the board granted the clemency discharge and said, this will free you up to try and get an upgrade from the board, but we're not giving you the upgrade that will get you benefits. And so how do we read your argument in the context of that? It seems like you want to override what was going on at the time. Your Honor, I think if I may, I would not agree that the president, what the clemency board materials or the proclamation actually gives in terms of what the president intended for this pardon to mean. Because remember, the pardon was never mentioned in the clemency proclamation. But you want us to read this one specific pardon document outside the context of the program. I think the pardon itself is an act of constitutional significance. The fact that the president says, I've issued to you a full pardon, that language has constituted – In furtherance of the clemency program. In furtherance of the clemency program. Let me just see if I can get where you are here. The fact that he used the word full pardon in this document automatically brings in that whole line of constitutional cases. And we can't look at the specific facts of this program. We submit that the fact that he used full pardon, and the only conditions were conditions that had been fulfilled, means that he gets the full pardon without any other restrictions on that. And if we look at the program and the board and recognize that when the board actually wanted in very special circumstances, particularly where people have been awarded medals of valor and things like that, they granted immediate upgrades to honorable discharges. So if they had intended the pardon here to grant him benefits, they could have done that. But they didn't. They pushed the decision to the corrections board. But I think, Your Honor, it loops or combines the clemency discharge issue with the pardon. So the immediately upgraded honorable discharges, as I mentioned, that has an effect of automatically entitling a veteran to benefits. We're not arguing here that Mr. Robinson's pardon entitles him to benefits. What we're arguing is that the VA can't use the pardon offense to bar him from receiving or applying for benefits. The VA still has to make its determination. And why didn't you appeal the refusal to upgrade, even if it's putting aside whether it's relevant to the VA's obligation? It seemed like that refusal to upgrade was directly at odds with the concept of a pardon. It's entirely based on the AWOL court-martial that was pardoned. It may have been, Your Honor, but I think there's also the government could have argued in that case that its refusal to upgrade or change the fact that he had been discharged by a general court-martial is similar to the case that was taught about expunging records, that because you have a pardon doesn't mean you automatically get to right away the fact of what occurred. So I think there's a difference between rewriting the records, rewriting the history, and saying you can no longer discriminate or impose a disability for a person. But, Your Honor, the first question about why there wasn't an appeal, Mr. Robinson has fought a lonely battle over a number of years applying for these benefits, and by the time the clinic got involved below, it basically was too late. It was too late for the ABCMR to go to them and to appeal that decision, basically in time there. So I can't answer the question before 2006 when the last ABCMR decision, the one that they denied in the early 80s. So do you think, are you aware of other people getting these clemency discharges and then pursuing the community service and other conditions to get a pardon? Did they get something less than a full pardon, or did everybody get what Mr. Robinson did? Your Honor, the history here is unfortunately unclear as to whether the clemency discharges always come to the fore. I don't know the answer to that either, but let me ask the hypothetical in case we can figure it out. If everybody got the same thing that Mr. Robinson got, then why would, in those rare cases, if your argument prevails, the Board had been required to, or the Board recommended automatic honorable discharges and distinguished a certain group. If everybody was going to get a full pardon, the effect of which under your argument would be to wipe out consideration of the misconduct, then the Board didn't need to make those different classes because anybody that went through the program, got the clemency discharge, and then the pardon would be entitled to have the VA ignore the offenses. But the program didn't do that. It created different classes. Your Honor, I don't know that if, there could be circumstances when the VA, again, we're not saying that the pardon entitles them to benefits. It removes the bar. So there might be circumstances in the VA in going back and doing a character discharge determination, has other bases to say that there's a veteran still not entitled to benefits absent consideration of the pardon offense. I don't know that we can look to saying that this would apply in all circumstances and be a blanket grant of benefits. In the legislative history, they discussed the fact that there might be some people who had the AWOL or other, had that basis that was going to be pardoned, but also might have something else that supported the bad conduct discharge. Right. There might be something else in the government. Fighting or some other dishonorable activity. Right. Right. I don't know how those facts would play out. So I don't know that it would necessarily be co-extensive in all cases. But I think that still it's important that the, these are other boards, other commissions that have opined on their interpretation of what the pardon would do. But it doesn't, it's not a legal binding interpretation of what the president intended by this pardon. I think that has to be governed by the plain language of the pardon itself. And the fact that the president said full pardon only conditions are the conditions that have been fulfilled. And the clemency discharge is defined as being completely neutral, a neutral discharge as it relates to veterans' benefits, right? The clemency discharge was intended to be neutral. The VA in its own regulations, they still had to make a character discharge determination to determine eligibility. I mean, the clemency board itself issued a memorandum saying it's neutral vis-à-vis benefits. Correct. I mean, they didn't want to hurt people by giving the clemency discharge. It was a guaranteed award, but it didn't prohibit it. Yes, ma'am. If I may reserve my time. Thank you. Mr. Mammon. Restore Mr. Mammon's time and give Mr. Goodman an additional three minutes if he needs it. Good morning, Your Honors. May it please the Court. What Mr. Robertson is arguing is that the president accidentally made him eligible for veterans' benefits. It's clear from the face of the presidential document setting up this program that wasn't the president's intent. Wait, wait, wait. When you say it's clear from the face of the program, all the program was intended to do is not guarantee benefits of the clemency discharge, right? Right. Okay, so the clemency discharge, by statute, there are certain discharges that guarantee you benefits, an honorable discharge. You're bound by that, right? Yes. And you're bound by a dishonorable discharge to not get benefits, right? No. Other than honorable and general, what the VA has to do is do a character of discharge termination. Other than dishonorable? Yes. Everything other than the general and the VA. Right. Other than dishonorable, you do a character of discharge termination. Character of discharge, not character of behavior discharge. Right. That's exactly right. So it's the character of discharge, but they do that in all cases other than the automatic yeses. So whenever there's not an automatic right to benefit, they do a character of discharge determination. Okay. So here you're saying that the pardon, which the entirety of his discharge was based only on that one court-martial, correct? Yes. That was the basis for the discharge. Nothing else, none of the other misconduct that you want us to look at, but that was the only thing it was based on, correct? Yes. And your character of discharge analysis is on the character of the discharge, not the character of all of his underlying service behavior. That's correct. Okay. So if a clemency discharge was meant to just put you in the bucket of all the  and you have a pardon as it relates to the only basis for discharge, then how can you say that you can look at that single basis for discharge? First of all, he was already in that bucket where the VA was going to do a character of discharge determination. That's true before or after the clemency discharge. Any time when an application of veterans' benefits comes in and he doesn't have a general or an honorable, the VA needs to look behind the curtain to be able to do a character of discharge determination. And all that means is they look at 3.12 in their regulations and see whether one of the ten statutory bars apply, or statutory and regulatory bars. There's five statutory, five regulatory. It's just a checkmark. Do any of these bars apply? If the answer to that is no, that none of those apply, then he's eligible for veterans' benefits. Right. But the statutory bar that you relied upon was the court-martial that had been pardoned. He was in fact discharged under a court-martial. That's absolutely correct. And he says the VA can't look at that when doing the character of discharge determination. If that's correct, then everybody in this program is in the same boat because the only way somebody isn't eligible for veterans' benefits is if one of those bars applies. And he's saying what a pardon does is comes in and it removes the bar. Removed a bar. Just one particular bar that this program removed, which was a bar. For him. For anybody. If someone else, you know, I can bet you there are a lot of people who are discharged on about five or seven bars, only one of which was pardoned. Well, that's not exactly right. The individuals, when they're discharged, there's a reason they're discharged. So a general court-martial or a special court-martial, even without a court-martial, there's a reason for their discharge. And it's the last thing they did. They don't say usually it's all these things that you've done throughout. We're going to look at all of that. It's the last period of AWOL. It's for that last period of AWOL that you're getting your discharge. And he's saying you can't look at that last period of AWOL because that's what's been pardoned. But if that were correct, it's correct for everybody in this program. That last statement that it's correct for everybody in the program isn't logical. The program is only for military deserters and draft evaders. So all of those military deserters who are seeking clemency and a pardon in the first place, those individuals are... He's not a deserter. He was not characterized as a deserter. He was administratively characterized as a deserter. But if you look at the regulations under which his discharge occurred, it was other than deserter. Under the Code of Military Justice, he's not classified as a deserter. Under the administrative view of what is a deserter, he was a deserter and classified as that. It doesn't ultimately matter for this case whether we decide whether the Congress meant when they said a statutory bar on desertion, whether they meant one of those or the other. It doesn't matter. There is a statutory bar for desertion. But we don't even need to look at that statutory bar because there are two others that could apply to this case. But the discharge wasn't for desertion. I guess I don't understand that. You can say that you can go in and recharacterize the discharge? Not at all. Not at all. The discharge was for his being AWOL. Right. Right. And he got a sentence from a general court marshal that said, because you were AWOL, we're discharging you from the Army. At the most extreme, his argument is that he's back in the Army now because we undo the entirety of that general court marshal. That can't be correct. So the court marshal had effect. And Congress said, no, he couldn't be back in the Army because he has a clemency discharge. He's been discharged. He's been discharged, yes. He received his clemency discharge. And that discharge replaces the bad conduct discharge that he had, but the intent of the President clearly wasn't to alter the balance of veterans' benefits. It wasn't for that purpose. Both the clemency discharge and the pardon, which should be considered together. There's some real tension here, I think, between the purpose of the program and the like, where it very specifically states this isn't supposed to give them veterans' benefits, and the pardon itself and the law following pardons, which says once you get a pardon, you can't consider the conduct to deny various rights. There's some tension, absolutely, in how to effectuate what the President was trying to do. How do we look at what the President's clear intent was and what the— Well, you keep saying the President's clear intent, but I'm not sure it's all that clear. I mean, the program itself operated in certain ways, but the proclamation he sent out wasn't clear about the effect of these pardons. Is there something more specific you can point us to? A couple of things. After the proclamation, there was a Federal Register notice that the Presidential Clemency Board put together, and we cite this in our brief. It's at 40 FedReg 56. It says a clemency discharge neither entitles its recipient to veterans' benefits nor bars his receiving those benefits to which he is otherwise entitled. The Veterans Administration and other agencies may extend veterans' benefits to some holders of a clemency discharge, but it is contemplated that most will not receive veterans' benefits. And as we explained in our brief, there is a narrow— Here's my problem. That's all talking about the clemency discharge. Yes. And I see that, that the clemency discharge alone doesn't get you there. But once he got the full pardon, why doesn't that prevent the VA? It seems to me that that's the argument your friend is making, is that there has to be a distinction between the clemency discharge and the pardon itself. And when it says full pardon and you've gone through the community service and things like that, that wipes out all the effects of the bad act. And why doesn't it wipe it out for benefits as well as everything else I think you'd concede it wipes it out for? I would direct the Court's attention to the Presidential Clemency Board report to the President where the Board specifically explained that every military absence offender who had gotten a bad conduct discharge gets both a clemency discharge now and a full pardon. So this wasn't just a one-time thing for him in answer to your earlier question. Everybody gets it, and that's on page 11 of the report. So the two aren't separable. It's not like he got a clemency and then later the President said, well, you did such a good job, we're going to give you a pardon too. Everybody gets both. Your argument has to be that we need to read the word full not to be fooled.  Because the President can't give a full pardon and then later say, oops, I didn't mean it. I'm taking it back, right? I don't know whether the President can do that or not. We certainly don't have to reach that question here. The President here said at the front end that I'm giving you a pardon pursuant to the clemency program. So we would have to assume that the use of the word full is not really conveying a full pardon. It doesn't have magical effect that the use of the phrase full pardon doesn't automatically mean that the court needs to adopt all of the case law about what a pardon does forever. We also explained in our briefs that we don't think even if that were the case, that would be a pardon. What is the case law, by the way? Carlesi seemed to indicate that a pardon notwithstanding, you still looked at the underlying conduct to see if it was a second offense. That's absolutely correct, Your Honor. So what is the real effect of full pardon? It's really in the context that it's given, right? It is in the context it's given because the underlying conduct still matters. A full pardon, it always restores the right of citizenship. And it's important to look at this whole program in its context. What the President was doing was addressing military deserters and Vietnam era draft evaders, many of whom were overseas. And the idea was to bring them back into society, to let them be citizens again, to let them vote, serve on juries, and do all the other things that a citizen gets. But the President said, this isn't entitled to give you veterans benefits. Some people were saying that it was, that it should have been. That's what they wanted the President to do. But this was a compromise position. He said, I'm going to bring you back as citizens, but I'm not giving you veterans benefits. That was more clear than the Presidential Clemency Board report to the President where they say. In the pardon itself, in this case, how do we bring all that in? Is it just the in furtherance of language? Because I think there really is some, again, there's tension between the language full pardon, which plainly means full pardon, and the rest of it. It's the in furtherance of, Your Honor. That's not like something. If we didn't have that in furtherance language, if it just said, you've completed this program and therefore I give you a full pardon, would the argument change? Then we would have to look at what full pardon means in the context of this and whether it does wipe out the misconduct. Then the court would look at what full pardon means, and I direct the court's attention to NRA North out of the D.C. Circuit where they looked at statutory language that said, if you've been indicted, you're not eligible for attorney's fees. Somebody was indicted, and then somebody got a pardon for that indictment, and the D.C. Circuit said, despite the pardon, you still don't get the attorney's fees because that statutory bar, because you were indicted, is still in place, and the president can't undo that statutory bar. That's not what a pardon is. The same analysis would apply here. The statutory bars are still in place, and the way to get around them. That argument seems to go a little too far, though. I mean, you're not suggesting that the president couldn't issue a full pardon that wiped out this misconduct and would have restored veterans' benefits, right? The president can override about anything he wants with a pardon, can't he? No, he can't undo statute. What the president can do is make it so that the executive can't punish you for that offense. And the president, through the board. If the president, in this full pardon, had said, I pardon you, you've completed this, the executive branch can no longer consider your AWOL offense in any way whatsoever. Then they couldn't have considered it for VA benefits. Then there would just be a minor administrative hurdle for him. He would go to the Board of Correctional and Military Records, and the board would say. That's the problem I'm having with your argument. You seem to suggest that the only way he could have gotten benefits is if a correction board upgrades it. But if a president issues a very broad pardon and says, you fulfilled everything I wanted you to do, everything's wiped out. The executive branch, including the Secretary of Veterans Affairs, will no longer consider your AWOL offense for which you were court-martialed in determining whether you're entitled to benefits. Clearly, the president can direct the executive branch not to do that. That would be a very difficult case. Congress didn't think in 1977, when they reaffirmed that they thought these statutory bars applied, even to these individuals, these individuals who had all gotten pardons. All of these people had been pardoned, and Congress said, we still think the statutory bars apply. Where did they say that? In 1977, H.R. Report 95-580, they said the correct interpretation of the law, a reasonable interpretation of the law, would indicate that so long as the reasons for discharge or release remain, the individual will be barred from receiving veterans' benefits under Section 3103A. That's the statutory bars. They say only in instances when the Board of Correction and Military Records changes the reasons for discharge should the bar be waived or removed. So Congress clearly thought, and this is after the decision at issue here, but Congress went in and their interpretation is the same as ours. But do we care? I mean, I understand the hypothetical pardon I'm talking about is not the one Mr. Robertson got, but if we have this broad hypothetical pardon, do we really care what Congress thought? I mean, that's what I'm trying to press. The Executive Branch or the President has very broad pardon authority, so if he wants to say these statutory bars no longer apply to this specific individual, I'm pardoning him for everything. Can't he do that? That would be exactly contrary to what the D.C. Circuit held in Inverne North. If the President were to say, I'm undoing these statutory bars. Let's say it were more specific. He says, in this individual case, I think he's entitled to veterans' benefits. I want you to pay him veterans' benefits. And what's your basis for saying the President can't do that? Because Congress controls the purse. It's unconstitutional if the President does that. Yes, but Congress has its place and the Executive has this. And Congress has said, to be a veteran, you have to serve in conditions other than dishonorable. And what that means is to look at these statutory bars, and there are regulatory bars on top of it, to make a character of discharge determination. And if you don't have any of those bars that apply to you, you are automatically entitled to veterans' benefits. You become eligible at that point. That's all it takes. Mr. Robertson's argument is the pardon automatically does that. And if it did it in his case, it did it in everybody's case. And that's clearly in conflict with the intention of the program in the first place. And that's our primary point, that this Court need not address that more difficult constitutional question that Judge Hughes raises about what happens when Congress explicitly says, I want this person to have veterans' benefits. And I'm sorry, when the President explicitly says that, and Congress says, no, there's a statutory bar to benefit. We don't have to reach that here, and of course the Court shouldn't reach that under constitutional avoidance doctrine, because this clemency program is not the general pardon authority. This is a pardon pursuant to this particular program where the President and those who effectuated his intent said, that's not what we're trying to do. They thought most people wouldn't get veterans' benefits. There are a few. There are 80, in fact, particularly meritorious individuals. They said, we're going to upgrade them immediately, and that immediate upgrade is going to result in veterans' benefits. Everybody else, they didn't think, would get that. Had anybody else, other than Nodady, ever gotten veterans' benefits? I don't know the answer to that question. There were a number of individuals who went to discharge review boards and had their discharge upgraded. Actually, I know the answer is yes, because then Congress went in in 1977 and said, they were using two lax standards. We want to use the same standards historically, and about half of those ended up not getting the upgrade because of Congress's retroactive putting in of the higher standards. The other half did. Anybody that got benefits without going to a corrections board? I saw some reference into the record that even if there was an automatic upgrade, what this clemency discharge could do would be if somebody had served a period of service prior to the one that they were court-martialed for, and then discharged honorably, they could get a connection for that without going to a corrections board. Yes, so normally if you serve multiple times, and the last one, your actual discharge was for conditions other than honorable, then even though you had previously earned veterans' benefits, you lost those. Under the clemency program, you don't lose those anymore. So those people, there were some of those, they did get the veterans' benefits. Thank you, Mr. Goodman. Thank you. Mr. Mamman, we restore your rebuttal. Thank you, Your Honor. You may proceed. Your Honor, if I may start with the question involving whether Congress, so whether the President can undo the statutory bar. And my friend on the other side mentioned that Congress had said that no, these pardons or the clemency discharges weren't meant to undo the statutory bar and that the President can do that. Your Honor, the argument that the President can't undo a statutory bar is contrary to a whole line of Supreme Court cases. In fact, all the cases that are cited about the authority of the President. We distinguish the cases such as NRA North, and I'll speak about that in a minute, but it goes to the heart of the pardon that the President can undo penalties and disabilities imposed by law. That goes to what happened in Garland, the very first case, criminal case that we discussed in our briefs talking about the fact that this attorney was barred from practicing in front of the Supreme Court unless he took the oath. That was a statute that Congress passed. The Supreme Court said Congress does not have the authority to restrict the presidential pardon. It cannot put anything beyond the reach of the pardon. So I think that goes to the heart of the pardon power, that the President has the authority to remove those statutory bars. In regards to the NRA North decision, the issue there actually was undoing the facts of the past, like changing what had happened such that no longer had he been indicted, so he was entitled to money. We're not challenging the fact, and we're not arguing that Mr. Robinson never went AWOL. He certainly did. It's not the question of changing what happened in 1966. It's whether in 1977 the VA can continue to apply the statutory bar to him to bar him from benefits. So I think North is not on the same line as what we're talking about here, whether the VA can continue to bar someone from receiving benefits. There was a question asked about – well, let me first address the fact that whether the pardons apply to everyone. And we don't know that, unfortunately, the history of this program. But even if the pardons did apply to everyone broadly, that's very consistent with our history, going back again to the Civil War, post-Civil War cases. There was blanket pardons issued by President Lincoln and President Johnson. But it's very consistent with a lot of history, both congressional hearings, reports from the board, which recognized that there was a lot of tension over this pardon program and that that was a compromise and it wasn't intended to be a blanket pardon of everybody. I understand in the Civil War and those other things there were much broader proclamations, but this was a very, very difficult time and a very difficult issue, and there was debate. And so I don't think that you have a very strong argument that this was intended to be a blanket pardon and that just by the fact of going through this they get a full pardon. I think – I mean that's where I'm having trouble is that it's in a specific time and place. Well, Your Honor, there was controversy here. We know from history. But there was also very much controversy in the Civil War as well. And that's the reason why we had all these laws that Congress passed saying this person will not be entitled to practice before the Supreme Court. All the note, Klein, Osborne, Cages, Paddleford, talking about the fact that the individual cannot seek reimbursement for monies that was seized or property that was seized. That was obviously a very controversial time as well, and the Supreme Court constantly said this pardon is a meaningful, powerful tool that must be given full effect. As far as the particular circumstances, I think, Your Honor, we have to go back to the language of the pardon itself and the fact that it uses the words full pardon. And only President Ford could have had in his own power, it was a power to him. He could have restricted that. He could have set further clarifications and further limitations. We submit that those aren't in the pardon itself and that the pardon must be read as it says, that it's a full pardon. All the conditions for it have been fulfilled. Thank you, Mr. Hammond. Thank you, Your Honor.